UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| RHODA E. LYONS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:11-CV-00200 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Rhoda Lyons, who is proceeding *pro se*, appeals to the district court from a final decision of the Commissioner of Social Security denying her application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB").[1] (*See* Docket # 1.) For the following reasons, the Commissioner's decision will be AFFIRMED.

### I. PROCEDURAL HISTORY

Lyons applied for DIB in May 2007, alleging disability beginning March 5, 2004. (Tr. 10, 87-89.) The Commissioner denied her application initially and upon reconsideration, and Lyons requested an administrative hearing. (Tr. 10, 49-72.) Administrative Law Judge ("ALJ") Bryan Bernstein conducted a hearing on December 9, 2009, at which Lyons, who appeared *pro se*, and a vocational expert ("VE") testified. (Tr. 18-48.)

On June 2, 2010, the ALJ rendered an unfavorable decision to Lyons, concluding that she was not disabled because, despite the limitations caused by her impairments, she could perform

---
[1] All parties have consented to the Magistrate Judge. (Docket # 13); *see* 28 U.S.C. § 636(c).

a significant number of jobs in the economy. (Tr. 10-17.)  The Appeals Council denied Lyons's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3.)

Lyons filed a complaint with this Court on June 10, 2011, seeking relief from the Commissioner's final decision. (Docket # 1.)

## II.  FACTUAL BACKGROUND[2]

### A.  Background

At the time of the ALJ's decision, Lyons was fifty years old; had a high school education and attended a year and a half of college; and possessed past relevant work as a nursing assistant and renal care technician. (Tr. 29-30, 87, 110, 117-18.)  Lyons alleges that she became disabled in May 2007 due to severe pain in her back and feet. (Tr. 109.)

At the time of the hearing, Lyons was working between ten and twenty hours per week as a customer service representative at Stein Mart.[3] (Tr. 118.)  As to her other daily activities, she testified that she lives with her husband and mother, and that her husband does the vacuuming and grocery shopping. (Tr. 36-38.)

Lyons's jobs in retail sales requires her to stand for four to five hours at a time with only one fifteen-minute break; she stated that this job is "very hard" for her because of her painful feet and back. (Tr. 38.)  To reduce her pain, Lyons takes several prescription medications, which cause her fatigue; consequently, she only takes Tylenol Arthritis when she has to drive or go to

---

[2] In the interest of brevity, this Opinion recounts only the portions of the 410-page administrative record necessary to the decision.

[3] However, at the time she filed her DIB application, Lyons represented that she was working thirty hours per week at Stein Mart. (Tr. 118.)

work. (Tr. 34.) Lyons also avoids lifting more than ten pounds and performing tasks that require "repetitive motion." (Tr. 42.) When asked if she could work an eight-hour shift at Stein Mart, Lyons said she could if she had to "be responsible" and pay her bills, but that she would be in "total pain the whole time." (Tr. 41.)

### B. *Summary of the Relevant Medical Evidence*

In March 2004, Lyons hurt her back while working as a nursing assistant when a patient in a Hoyer lift fell on top of her. (Tr. 31, 399.) Seventeen months later, in August 2005, Dr. Mark Crawford of Fort Wayne Orthopaedics performed a spinal fusion on Lyons. (Tr. 283, 308.) By March 2006, Lyons pre-operative symptoms had "nearly completely cleared." (Tr. 303, 308, 332.)

In August of 2006, Lyons underwent bunion surgery, after which she continued to complain of foot and ankle pain disproportionate to what her surgeon, Dr. Dominick DeTommaso of Fort Wayne Orthopaedics, normally expected; he instructed her to wear athletic shoes to work. (Tr. 261, 276-77, 285.) Later that same month, Lyons reported to Dr. Crawford that she "felt a pulling in [her] low back" after pushing or lifting her mother in a wheelchair. (Tr. 283, 290, 399.) Upon examination, Lyons had some diffuse tenderness in her lumbar spine, but she was intact neurologically and had no radicular symptoms; Dr. Crawford referred her to physical therapy. (Tr. 283.)

Lyons continued to complain to her physicians of low back pain. (Tr. 244, 249, 254, 259, 267, 270, 278.) An MRI, however, did not show any significant degenerative changes from her previous fusion. (Tr. 254, 259, 267, 270.) In November 2006 and February 2007, Dr. Crawford assigned Lyons a ten-pound lifting restriction and stated that she could occasionally bend, twist,

and stretch. (Tr. 263, 273.) In May 2007, he stated that Lyons could return to work but could not climb stairs or ladders, lift more than ten pounds, or more than occasionally bend, twist, or stretch; he also stated that she must wear athletic shoes to work. (Tr. 251.)

In August 2007, Dr. Michael Arata of Fort Wayne Orthopaedics recommended that the hardware from Lyons's previous back surgery be removed since she was "mostly tender when palpating over the hardware." (Tr. 383.) The hardware was later surgically removed. (Tr. 399.) In September 2007, Dr. Yogesh Amin, who practiced internal medicine, stated that Lyons was capable of doing "non-stressful activities" but should "avoid heavy physical strenuous activities." (Tr. 369.)

That same month, Dr. M. Brill, a state agency physician, reviewed Lyons's record and concluded that she could lift twenty pounds occasionally and ten pounds frequently; stand, walk, or sit for about six hours each in an eight-hour workday; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; but never climb ladders, ropes, or scaffolds. (Tr. 385-92.) A second state agency physician later affirmed his opinion. (Tr. 395.)

In October 2008, Dr. Arata also opined that Lyons could return to work, but restricted her from standing more than six hours, climbing ladders, or lifting more than ten pounds. (Tr. 404.) He stated, however, that she could occasionally bend, twist, and stretch. (Tr. 404.)

In February 2009, Lyons underwent a neurological evaluation by Dr. Thomas Banas for her continued complaints of pain. (Tr. 399-400.) She described her pain as a "ten" on a ten-point scale, stating that it was aggravated by bending, stooping, and kneeling; she reported, however, that she was able to function despite the pain. (Tr. 399.) She had no radiating pain, but did have some suggestion of sciatic symptoms and pain upon a straight-leg raising test. (Tr. 399.) Dr.

4

Banas opined that Lyons had chronic pain and perhaps a "failed back syndrome." (Tr. 400.) He noted an S1 radiculopathy and abnormal posture, suggesting upper lumbar disk disease or spondylitic disease. (Tr. 400.) He recommended physical therapy and yoga, medication, and a repeat MRI. (Tr. 400.)

In August 2009, Dr. DeTomasso again opined that Lyons needed to wear athletic shoes and custom orthotics while at work. (Tr. 396-97, 406-09.) He did not identify any other restrictions. (Tr. 396-97.)

## III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp

5

of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## IV. ANALYSIS

### A. *The Law*

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[4] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The

---

[4] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

6

burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. *The ALJ's Decision*

On June 2, 2010, the ALJ rendered the decision that ultimately became the Commissioner's final decision. (Tr. 10-17.) He found at step one of the five-step analysis that Lyon had earned substantial gainful activity in at least one year (2007) after her alleged onset date in May 2004; nevertheless, he proceeded to step two. (Tr. 12.) At step two, the ALJ concluded that Lyons had severe impairments. (Tr. 12-13.)

At step three, the ALJ determined that Lyons's impairment or combination of impairments was not severe enough to meet a listing. (Tr. 13.) Before proceeding to step four, the ALJ determined that Lyons's testimony of debilitating limitations was not entirely credible. (Tr. 13-14.) He determined that she had the RFC to lift and carry twenty pounds occasionally and ten pounds frequently; occasionally reach extreme postures, such as stooping, kneeling, and bending; but not stand or walk for longer than thirty minutes at a time or work in hazardous conditions, such as around dangerous machinery, in proximity to vehicles moving in close quarters, or balancing in the context of unprotected heights. (Tr. 14-15.)

Based on this RFC and the VE's testimony, the ALJ concluded at step four that Lyons was unable to perform her past relevant work as a nursing assistant and renal care technician. (Tr. 16.) The ALJ then concluded at step five that she could perform a significant number of light work jobs in the economy, including laundry folder, hand packager, and collator operator. (Tr. 16-17.) Accordingly, Lyons's claim for DIB was denied. (Tr. 17.)

## C. Discussion

Lyons conclusorily contends in her one-page opening and reply briefs that she is "disputing" what Drs. Amin, Arata, Banas, Brill, Crawford, and DeTommaso said about her physical abilities, contending that they did not provide "all the information about [her] injuries." (Reply Br. 1.) Lyons also asserts that she has several new conditions—carpal tunnel syndrome and additional degenerative disk disease due to a recent fall—that were not before the ALJ, and that a new doctor, Dr. Thomas Van Den Driessche, stated that she should not be working.[5] (Opening Br. 1; Reply Br. 1.)

In the end, Lyons's appeal of the Commissioner's final decision essentially equates to a plea to this Court to reweigh the evidence with the hope that it will come out in her favor this time. Of course, a plea to the Court to reweigh evidence is ultimately unavailing. *See Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000) (explaining that the court is not allowed to substitute its judgment for the ALJ by "reweighing evidence").

1. <u>The Assigned RFC and the ALJ's Consideration of the Medical Source Opinions of Record Are Supported by Substantial Evidence</u>

Although an ALJ may ultimately decide to adopt the opinions expressed in a medical source statement concerning the ability of a claimant to perform work-related activities, the RFC assessment is an issue reserved to the ALJ. 20 C.F.R. § 404.1527(e); SSR 96-5p. The RFC assessment "is based upon consideration of *all* relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or

---

[5] Lyons, however, does not attach any medical records, from Dr. Van Den Driessche or otherwise, evidencing her assertions. (*See* Docket # 18, 22.)

unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence." SSR 96-5p (emphasis added); *see* 20 C.F.R. § 404.1545.  Thus, a medical source opinion concerning a claimant's work ability is not determinative of the RFC assigned by the ALJ. *See* SSR 96-5p ("[A] medical source statement must not be equated with the administrative finding known as the RFC assessment.").

      Here, the ALJ concluded that Lyons had the RFC to perform light work, which generally requires the ability to lift ten pounds frequently and twenty pounds occasionally and stand or walk six hours out of an eight-hour workday, *see* 20 C.F.R. § 404.1567, except that he found Lyons could stand or walk no more than thirty minutes at a time; only occasionally reach extreme postures such as stooping, kneeling, or bending; and could not perform work involving hazardous conditions such as around dangerous machinery, in proximity to vehicles moving in close quarters, or balancing in the context of unprotected heights. (Tr. 14-15.)

      As the ALJ explained, this RFC is consistent with the limitations opined by Dr. Brill and Dr. Corcoran, the state agency physicians, who concluded in August and October 2007, respectively, that Lyons could perform light work that required no more than frequent balancing; occasional climbing of ramps or stairs, stooping, kneeling, crouching, or crawling; but no climbing ladders, ropes, or scaffolds. (Tr. 386-87.)  Of course, "[t]he regulations, and this Circuit, clearly recognize that reviewing physicians and psychologist[s] are experts in their field and the ALJ is entitled to rely on their expertise." *Ottman v. Barnhart*, 306 F. Supp. 2d. 829, 839 (N.D. Ind. 2004); *see Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004); 20 C.F.R. § 404.1527(f)(2)(i) ("State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also

9

experts in Social Security disability evaluation.").

Furthermore, the RFC assigned by the ALJ was also, for the most part, consistent with the opinions of Lyons's treating physicians. Dr. Crawford opined in May 2007 that Lyons could return to work provided that she wore athletic shoes; did no more than occasional bending, twisting, or stretching; and did not lift objects heavier than ten pounds. (Tr. 251, 264.) In September 2007, Dr. Amin found that Lyons could perform work that did not involve "heavy physical strenuous activities." (Tr. 369.) In October 2008, Dr, Arata stated that Lyons could lift up to ten pounds; stand up to six hours at a time; occasionally bend, twist, or stretch; but never climb ladders. (Tr. 404.) Finally, Dr. DeTomasso opined in August 2009 that Lyons could work if she wore athletic shoes with orthotic inserts. (Tr. 306.) Indeed, as the ALJ observed, *none* of Lyons's treating physicians of record opined that she could not work. (Tr. 14.)

And, where the assigned RFC was inconsistent with the restrictions assigned by Lyons's treating physicians, the ALJ adequately explained his reasoning. *See Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (explaining that when the record contains conflicting medical evidence, the ALJ has an affirmative responsibility to resolve that conflict). In finding that Lyons could occasionally lift twenty pounds, the ALJ discounted Dr. Crawford's and Dr. Arata's opinion that Lyons could not lift more than ten pounds because neither physician identified particular medical findings in support of his conclusion. In that same vein, the ALJ observed that Lyons's MRI showed mild degenerative disk changes at the L5-S1 level associated with a small central annular disk tear, but was otherwise unremarkable. (Tr. 15, 313.) Of course, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion." 20 C.F.R. §

404.1527(d)(3); *see Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) ("[M]edical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints."); *Smith v. Apfel*, 231 F.3d 433, 441 (7th Cir. 2000) ("[T]he absence of laboratory findings from [the treating physician's] report is a factor that the ALJ could consider in determining the weight to give [his] opinion.").

Of course, when assessing Lyons's RFC, the ALJ also determined the credibility of her symptom testimony, concluding that she was not entirely credible. (Tr. 14); *see Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004) (explaining that making a credibility determination is inherent in an ALJ's RFC assessment). Because the ALJ is in the best position to evaluate the credibility of a witness, his determination is entitled to special deference. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and he articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006), his determination will be upheld unless it is "patently wrong." *Powers*, 207 F.3d at 435.

In determining Moore's credibility, the ALJ noted that the objective medical evidence, described above, did not necessarily support the severity of Lyons's subjective complaints. *See Hall v. Barnhart*, No. 1:04-cv-1847-DFH-TAB, 2006 WL 3206096, at *4 (S.D. Ind. June 15, 2006) (explaining that the lack of objective medical evidence is one factor to be considered by the ALJ when making his credibility determination); 20 C.F.R. § 404.1529(c)(3). In addition, the ALJ properly considered Lyons's work activity in connection with determining her credibility. 20 C.F.R. § 404.1529; *see Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008)

("Although the diminished number of hours per week indicated that [the claimant] was not at his best, the fact that he could perform some work cuts against his claim that he was totally disabled."). Therefore, the ALJ's reasoning with respect to the credibility of Lyons's symptom testimony can be adequately traced, and his determination is not "patently wrong." *Powers*, 207 F.3d at 435.

In sum, the ALJ properly considered the medical source opinions of record, resolved any conflicts among such evidence, and then arrived at a RFC that is supported by substantial evidence of record. *See* 20 C.F.R. § 404.1527(e)(1) (articulating that the final responsibility for deciding the claimant's RFC and whether she is disabled is "reserved to the Commissioner"). Therefore, the ALJ's assigned RFC and consideration of the medical source opinions do not justify a remand of the Commissioner's final decision.

2. A Sixth Sentence Remand for Consideration of New Evidence Is Not Warranted

Lyons claims in her briefs that she has several new physical ailments—carpal tunnel syndrome and further degenerative disk disease—that were not before the ALJ. She also contends that her new doctor, Dr. Van Den Driessche, stated that she should not be working. Lyons, however, did not submit any medical records with her briefs to support these assertions.

In any event, even if she had submitted the additional medical records, this evidence was not before the ALJ when he made his decision. Of course, "the decision reviewed in the courts is the decision of the administrative law judge. The correctness of that decision depends on the evidence that was before him." *Eads v. Sec'y of the Dep't of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993) (explaining that an ALJ "cannot be faulted for having failed to weigh evidence never presented to him"). Therefore, such evidence can only be considered in the

12

context of a request for a sixth sentence remand. Lyons, however, has not requested a sixth sentence remand.

And even if she had made such a request, a sixth sentence remand is not warranted on this record. The sixth sentence of 42 U.S.C. § 405(g) permits a remand "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." For sixth sentence purposes, "'materiality' means that there is a 'reasonable probability' that the Commissioner would have reached a different conclusion had the evidence been considered, and 'new' means evidence 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (citing *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993)).

Lyons fails to provide the Court with any basis upon which to conclude that "new" and "material" evidence exists. *See generally Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008) ("Medical evidence postdating the ALJ's decision, unless it speaks to the patient's condition at or before the time of the administrative hearing, could not have affected the ALJ's decision and therefore does not meet the materiality requirement."); *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (same); *McCurrie v. Astrue*, No. 09 cv 3371, 2010 WL 333696, at 5-6 (N.D. Ill. Jan. 25, 2010) (denying a remand where the purportedly new evidence, which spoke only to the claimant's current back condition, postdated the ALJ's decision by nearly ten months). Furthermore, "[e]vidence suggesting that a claimant has developed additional impairments or that [her] impairments have worsened may form the basis for a new application but are not a basis to reverse the decision on a previously submitted application." *Id.* (citing *Getch*, 539 F.3d

at 484).

Nor does Lyons attempt to show good cause why this evidence was not timely produced during the prior administrative proceedings. Indeed, "such a rule would amount to automatic permission to supplement records with new evidence after the ALJ issues a decision in the case, which would seriously undermine the regularity of the administrative process." *Perkins*, 107 F.3d at 1296; *see also Sample*, 999 F.2d at 1144; *Keys v. Barnhart*, No. 01 C 8334, 2002 WL 31369793, at *8-9 (N.D. Ill. Oct. 21, 2002); *Romanoski v. Sullivan*, No. 91 C 8113, 1992 WL 346417, at *8 (N.D. Ill. Nov. 19, 1992) (failing to find good cause where claimant waited until after the ALJ's opinion was rendered to seek out a psychological evaluation and offered no explanation for his delay).

Therefore, Lyons's plea that this Court consider evidence that was not before the ALJ is misplaced. In any event, even if Lyons had requested a sixth sentence remand to consider this additional evidence, which she did not, there is no basis upon which the Court can conclude on this record that a sixth sentence remand is warranted. As a result, Lyons's plea for a remand is unavailing, and the Commissioner's final decision will be affirmed.

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Lyons.

SO ORDERED.

Enter for this 2nd day of April, 2012.

S/Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge